Thank you, Your Honors. May it please the Court, Counsel, my name is Jordan Bordewick. I represent the appellant, Jenifer Wahl. Ms. Wahl is asking this Court to set aside the District Court's denial of her suppression motion in this matter. A suppression hearing was held. At that hearing, no credible evidence was put forward that law enforcement observed a violation of the law that would have given them probable cause to stop Ms. Wahl's motor vehicle. Testimony was put forward by Detective Gebhardt that he was surveilling Ms. Wahl. He observed her vehicle make an illegal right-hand turn where her front tire crossed into the center lane before moving back into the outside lane of travel, which would be a violation of South Dakota law. He further testified he passed that information on to a trooper, Gamber, who later pulled over Ms. Wahl. The District Court credited this testimony and we found it credible. It's our position that that was clearly erroneous. Understanding credibility determinations are rarely set aside. There is a basis for it when the testimony that is credited is contradicted by extrinsic evidence. We believe that's what happened here. Both law enforcement officers testified to written reports they wrote shortly after this stop. In Detective Gebhardt's report, he doesn't indicate that he had traveled to Deadwood and was taking part in surveillance. He doesn't indicate that he was parked in this parking lot next to the intersection where this incident took place or where the violation of the law was observed. He doesn't even indicate he's the law enforcement officer that observed the violation of the law. Trooper Gamber's report, it indicates he was advised of this illegal turn, but it doesn't indicate who told him of it. The fact that all these pertinent, important facts are left out of their written reports that are later testified to at the suppression hearing does create inconsistencies and I think contradictions that would warrant the court . . . But the only witness that really testified in person was Gebhardt, right? Trooper Gamber testified as well at the suppression hearing, yes. How about only one testified? Detective Gebhardt, I guess, would be the only witness that testified as to the illegal turn. He's the only officer that allegedly witnessed that violation. There were two officers who testified in front of the judge, correct? You know what the hearing . . . I'm really asking. There was a total of four law enforcement officers that testified at the suppression hearing. I misunderstood the briefs. Again, only one that spoke to the violation of the law. We believe, again, the lack of detail in those reports basically allowed the officers to fill in those important details at a later time if the stop was challenged. That does create an inconsistency. It's a basis for the court . . . district court to have questioned the credibility of those officers and that testimony. We also raised the issue with the district court's finding that Detective Gamber . . . I'm sorry, Detective Gebhardt could have witnessed this violation of law from where he was located. His testimony was that he was in a parking lot on the opposite side of this intersection. He's across multiple lanes of traffic. There's a sidewalk and then he's in this adjacent parking lot. From that location, he claims to have seen the tires in Ms. Wall's vehicle briefly cross over the center line. We do not believe it's possible that from that location, from that vantage point, he could have seen such a minor infraction. For those issues, we believe there was problems with the suppression hearing and the court's ruling and findings in that. We'd ask that it be set aside. We also appealed certain decisions in Ms. Wall's sentencing hearing, specifically the court's findings with regards to our objections to the pre-sentence report. In the pre-sentence report, there was an allegation that when Ms. Wall's apartment was searched, law enforcement found one pound of marijuana. That allegation was objected to in its entirety that one pound of marijuana was found in her apartment. At the sentencing hearing, the only law enforcement officer that testified was a Detective Olson. He indicated he could not speak to the quantity of marijuana that was found in the apartment. Nonetheless, the court found that one pound of marijuana should be attributed to Ms. Wall in determining her drug quantity for purposes of her base offense level. I remember the testimony being six or seven jars of marijuana. I guess we don't know how big the jars are, but it seems like a pretty conservative estimate given the number of jars, but I just wanted to ask you whether that was enough. I believe that's correct, Judge Strauss. The marijuana was found in separate containers, separate jars, but ultimately, Detective Olson said he could not speak to the total weight of that marijuana. There's also an objection to . . . Didn't your objection, though, relate to the nature of the substance rather than the quantity? Yes, Your Honor. The written objection of the pre-sentence report did focus on the quantity, rather, if the substance itself was marijuana, if it was tested. However, the entire allegation itself was properly objected to. Well, that's the question. What do you mean the entire allegation was properly objected to? The whole sentence, one pound of marijuana packaged in separate containers was found in Ms. Wall's apartment, was the basis of the objection. That would put the government on notice that that allegation should be proven. Well, but the objection, as I understand it, said we object to that sentence because the substance was never confirmed to be marijuana. So that put the government on notice they had to show that it was really marijuana. I understand that, but why doesn't that limit the scope of the objection? The written objection to the pre-sentence report focusing on whether the substance itself was marijuana was based on what was in the written discovery, what appeared to be lacking. However, again, the fact that that line was objected to, I think, shifts the burden to the government in that the hearing, they could not put forward evidence as to the weight of the substance. So they may have proven the substance itself was marijuana or provided sufficient evidence as to the type of substance, but, again, they failed to put forward the weight, which was part of that line that was objected to in the pre-sentence report. Go ahead. There was another objection to a combined quantity of 14 ounces of methamphetamine and cocaine that was attributed to Ms. Wall in arriving at her guideline range. This amount was arrived at based on Detective Olson's testimony of various Facebook messages between Ms. Wall and her client Ovu. Our position is that these Facebook messages in and of themselves weren't sufficient to arrive at this quantity of 14 ounces and attribute it to Ms. Wall for purposes of determining her base offense level. There's no other evidence corroborating that the transactions alluded to in these messages actually took place. There's no in-person surveillance of Ms. Wall or Ms. Ovu. There was no co-conspirator statements. And our position is basically that the messages in and of themselves, they allude to transactions that may have taken place, but there's no showing that they actually took place with that amount in mind. I see my time is up. You may save. You may reserve. Thank you. Thank you for your argument. Ms. Rich, we'll hear from you. Good morning. May it please the Court, Counsel. My name is Katherine Rich on behalf of the United States. The United States' position in this case is that all decisions should be affirmed below. There is nothing in the record that contradicts the testimony provided by Detective Gebhardt at the suppression hearing. And in fact, the evidence from the other three officers who testified, who were all in the Deadwood area on that day, Trooper Gamber, Trooper Griffith, and Detective Wilson, is that they were all a part of this operation. And they heard the announcement on the radio that Detective Gebhardt had observed the traffic violation. And in Detective Gebhardt's testimony, he has a diagram, Exhibit 5A, where he marks on the exhibit where he was located and how he was able to see the violation committed by Ms. Wall. And that was consistent with where Sergeant Olson said he was located. So he loses visual, and then Detective Gebhardt is able to pick up visual of Ms. Wall as she's traveling. And the District Court noted in reviewing the Magistrate's Court's report and recommendations that it was difficult to imagine that he could have a better vantage point than he had to see this traffic violation. It was an unobstructed view. He was in literally Kitty Corner and was as close as you could get without being on the roadway. Furthermore, this was an experienced detective. He had, I think it was, I can't remember, but 12 years of law enforcement. He was a former patrol cop, someone who has experience in seeing traffic violations. So there's just no clear error. And as this Court has noted in past decisions in looking at the clear error of standard of review, I think it was the Vanover Court in 2011. There it was determined whether a Miranda advisement was proper, noting that the officers were professional, experienced with high-stress environments. It was a routine activity, and they had little incentive to lie about the situation. And that's what we have here. Detective Gebhardt had no incentive to lie. Surveillance is a routine activity for drug investigators. And it just simply wasn't contradicted by anything and was, in fact, corroborated. Well, you've contradicted two or three times. It was omitted from his report, right? There was, he explains that in his report there was a part where he omitted the word I, and he explains that. And notably, the reports are not in evidence. Now, the defense – He was cross-examined about them, wasn't he, or something, correct? He was, yes. I think both counsel questioned him about it. About the report. About the report. I see. And he explained that. And I think it's important to remember here that it's different when officers are responding to specific questions by trained attorneys on very specific issues with the benefits of visual aids as opposed to summary reports. As far as I left this time, my office, I drove and arrived in Deadwood at this time, and all of those specifics are just – I mean, they would be writing books about every activity they do all day if that was expected. So, the fact that their testimony was more specific at a suppression hearing, I think, is just not dispositive of whether or not their summary reports were sufficient. So, given this Court's – Is this a significant fact? I'm sorry, what? Wasn't the alleged traffic violation a significant fact that might be expected to be in a report, even if it's a summary report? It was in the report. The fact that he observed a traffic violation. It said – I see. So, what was not in the report? So, the report said something along the lines of observed. It's talking about we saw the vehicles meet on the tracking applications, reported to the Deadwood area, and then observed traffic violations. So, instead of saying, I observed the wide right-hand turn, it just said observed the right-hand turn. So, it was like a shorthand, basically. And both the Magistrate Court and the District Court found that there was no credibility problem as he had an explanation for that at the hearing. This is distinguishable from the cases that offense relies on, notably Procupec, where there was a failure to signal, where the trooper said one thing on the body cam and literally said the exact opposite at the suppression hearing. Further, I would just like to note that – So, you're saying it has to be an explicit contradiction. Sure, yes. Not a contradiction by omission, if that's not linguistically strained. Correct. I think that's the very high deference standard that this Court has set in this line of cases on clear error review. And, in fact, in the Mendoza case, this Court said the mere fact an incident report omits certain details is not sufficient to render the officer's testimony concerning the underlying action basically implausible. The most important thing he omitted was where he was located. The report doesn't say where he's located, right? Correct. He doesn't say that. But, again, they typically don't announce that in reports, and there's no need to. And he remembered that very clearly and marked it in the exhibits at the hearing. Further, I would just like to note that the officers also had reason – probable cause, reasonable suspicion to stop the vehicle based on the collective knowledge doctrine, the entirety of the investigation, including the Facebook messages, the tracker history, the information they garnered about Ms. Vu, who was the defendant's supplier. So the statements were not inconsistent. They were just more detailed. Moving on to the sentencing hearing, Judge Strass, as you noted, the marijuana, Sgt. Olson testified, were in jars. So I think that supports the quantity determination for the marijuana. It is our position that this argument is forfeited because the objection specifically as to that paragraph stated, it does not appear the substance was confirmed to be marijuana. So the questions were focused on Sgt. Olson's ability to identify the substance in the jars as marijuana and not the quantity. That being said, I think the testimony does support the quantity amounts in that he agreed that it was approximately a pound. Did he raise it in the oral part of the sentencing, asking the judge to make a ruling, even though it wasn't in the written objections? Somewhat. I mean, I would say it was unclear at best. And the part that the defense relies on where he says he can't speak to quantity, that's on page 18 of the sentencing transcript. And that immediately followed a question where Sgt. Olson was asked by defense counsel, and you didn't personally weigh it. Answer, no, sir. So you can't speak to quantity. Correct. So I think that's somewhat misleading in that he'd just been asked about whether he'd been involved in weighing it, and the answer was no. But as to his visual estimations and his training and experience, again, another very experienced officer. I think he was, like, 17 years or something like that. Very experienced to speak to quantity based on his visual observations. So I think it was established even though I think it was waived, but it was sufficiently established. Did the local rules call for objections to the pre-sentence report to be made in advance of the hearing so that the government will know what witnesses and evidence it needs to present? They do, and there was an objection raised, but the way it was worded. I understand that. But, yes, they do. As to the other quantities of cocaine and methamphetamine that were in the PSR based on the Facebook messages, those are the same Facebook messages that were at the suppression hearing at issue. So those are all in the record. And the district court, as you know, has to approximate the quantity. The 14 ounces was contemplated by the factual basis statement in that the time frame for the conspiracy was January of 2022 to November of 2022. So it was more than just the stop of the vehicle in October. It was more than just the search of Ms. Wall's apartment. It was the conspiracy quantity, and that quantity is in part from the Facebook messages. The estimates are also consistent with the information in the PSR about the quantities that Ms. Wall's supplier, Amanda Vu, was dealing. At one point, she had a single pickup that was like 50 kilograms, and that's in the PSR. And so the fact that her subdistributor is dealing ounces at a time, which we know she was, because that's what she got in the traffic stop on October 17th, the 14 ounces in the historical Facebook messages are consistent with their normal dealings and the type of quantities that Ms. Vu was bringing into South Dakota that she was getting for there. And so, as I said, the factual basis statement contemplates that, as well as the statement in there that meth and cocaine was brought to South Dakota by the defendant's supplier, Amanda Vu. And then it also acknowledges what was found in the search, including $14,000 cash. If that is consistent with someone who is dealing in ounce-type quantities and breaking them down, that you would have that type of cash on hand. So the district court did not clearly err. Judge Kobus did not clearly err in the factual findings made at sentencing because that 14 ounces was a conservative estimate based on the officer's training experience. I see my time is up, so I will just ask the Court to affirm. Thank you. Very well. Thank you for your argument. Would you care to make a rebuttal? Yes, Your Honor. Just to speak briefly to the government's claim, and I believe it was a court's finding, too, that even absent law enforcement witnessing this illegal turn, there would have been probable cause for the stop. We disagree with that. There was a great deal of time that elapsed from when these vehicles were observed together in the Super 8 parking lot, Ms. Vu's vehicle and Ms. Wall's vehicle. That occurred at, I believe, 10-16. And this later stop of the vehicle that didn't occur until sometime after 12 o'clock, I believe Detective Olson indicated he located Ms. Wall's vehicle by the Wells Fargo began. His surveillance of that around 12-30. There's over a two-hour gap of time there where they don't know what Ms. Wall's doing. She's left her vehicle. She's engaged in other conduct. They can't say whether it's criminal or not. I believe the proposition that they may have witnessed through vehicle trafficking a drug transaction take place at 10-16 as the government carte blanche to pull her vehicle over at any point thereafter would be an erroneous finding. Briefly, one other issue with sentencing that was objected to was the firearm enhancements. Again, we don't dispute a firearm was found in Ms. Wall's apartment. However, again, at sentencing, very little detail was given with regards to that firearm. The same room, right? Excuse me? It was in the same room, the same bedroom? It was found somewhere in the same room as other paraphernalia.  But its exact location was unknown. We don't believe sufficient evidence was put forward to show that that firearm was possessed as part of her drug trafficking. I'm not sure that's really an appropriate rebuttal. But we heard what you said, so thank you for your argument. Thank you, Your Honor.